E. W. King v. Commissioner.
E. W. King v. Commissioner
Docket No. 10106.
United States Tax Court
1949 Tax Ct. Memo LEXIS 175; 8 T.C.M. (CCH) 528; T.C.M. (RIA) 49130; May 25, 1949
*175 W. M. Fuqua, Esq., 512 Commerce Union Bank Bldg., Nashville 3, Tenn., for the petitioner. Homer F. Benson, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined the following deficiencies in income tax: Year
Deficiency
1938
$ 1,908.89
1939
17,385.46
1940
12,099.57
1941
28,181.70 The only issue for decision is whether the Commissioner erred in adding to the income of the petitioner the income of Motor Sales Company for each of the taxable years. Findings of Fact The petitioner is an individual who resides in Kingsport, Tennessee. His returns for the taxable years were filed with the collector of internal revenue for the District of Tennessee. Myrtle C. King is his wife. They have three children who were about 15, 14 and 5 years of age in 1938. The petitioner's principal business in 1938 and prior thereto was as President and a 50 per cent stockholder of Mason and Dixon Lines, Inc., a motor freight common carrier engaged in interstate commerce, hereafter called the corporation. The other 50 per cent of the stock of that company was owned by R. B. Moore or members of his family. King and *176 Moore, prior to and at the beginning of 1938, were also equal partners operating under the name of King & Moore. The partnership had nonassignable contracts with several manufacturers to sell their products in Kingsport and, in some instances, Sullivan County. The principal business of the partnership was to supply trucks, trailers, parts, tires and other equipment to the corporation, but some additional sales were made to the public. The petitioner and Moore never invested any capital in their partnership because that was not necessary. The corporation either bought its equipment on conditional sales contracts or financed and paid for it when delivered by the manufacturer. Cash was immediately obtained for the conditional sales contracts by negotiating them at a bank. It paid for parts in time to enable the partnership to pay the manufacturer. The business of the partnership was conducted from the place of business of the corporation. It required little attention because it consisted principally of forwarding to the manufacturers orders of the corporation for equipment or parts. The Interstate Commerce Commission had a regulation providing that no common carrier could purchase more *177 than $50,000 of goods in the aggregate, in any one year, from another organization except by competitive bidding if, inter alia, the president of the common carrier also had a substantial interest in the selling partnership. That regulation was extended on January 29, 1938 to common carriers by motor vehicle. The corporation had purchased about $50,000 of goods from King & Moore by mid-summer of 1938. It could not have operated its business successfully if required to use competitive bidding in the acquisition of parts and other equipment constantly needed in order to keep its equipment in service. The petitioner and Moore consulted counsel and other sources of information as to what should be done in order to prevent a violation of the I.C.C. regulation and the Anti-Trust Act. They decided to dissolve their partnership of King & Moore and to take such steps as they could to have their wives carry on the business theretofore carried on by their partnership. This solution was suggested by Myrtle C. King, who had a desire to engage in business. The wives had had no previous business experience. The partnership of King & Moore was dissolved on August 1, 1938 and all of its assets *178 were distributed to the two partners. Myrtle C. King and Shirley J. Moore, the wives of King and Moore, entered into an agreement of partnership on August 1, 1938 to carry on a business under the name of Motor Sales Company, acting as agents and distributors of the products of the various companies theretofore represented by King & Moore. King & Moore executed an assignment and bill of sale on August 1, 1938 purporting to assign for $1.00 all contracts which King & Moore had with Studebaker Corporation, Edwards Iron Works, Firestone Rubber Company, Goodyear Tire & Rubber Company, Free Service Tire Company, and other contracts not specifically mentioned, and good will of King & Moore, and to have the companies mentioned enter into new contracts with the partnership of Motor Sales Company designating that partnership as agents and distributor of the products. Motor Sales Company agreed to carry out and continue the established policies of the former partnership of King & Moore. The two wives, operating as Motor Sales Company, obtained new contracts from several manufacturers similar to those previously held by King & Moore. They employed as manager of their business a man formerly *179 employed by the corporation who was familiar with the parts business. He devoted his full time to the business of Motor Sales Company and received a small salary from it. That arrangement continued during the last five months of 1938 and during the first four months of 1939, at which time the petitioner bought out Moore's interest in the corporation and his wife bought out the interest of Shirley J. Moore in Motor Sales Company as of January 1, 1939 for $1,666.67. Myrtle C. King continued the business of Motor Sales Company as a sole proprietorship until January 1, 1941, at which time, on her own initiative, she entered into a new partnership agreement with J. R. King and R. P. King, who were the father and the brother of the petitioner. Motor Sales Company then for the first time, established an office separate from that of the corporation. The former manager of Motor Sales was released at that time and returned to the employ of the corporation. J. R. King was then about 75 years of age. He had had little business experience. R. P. King had had some experience in selling motor vehicles. They were both employees of the corporation and continued to be employed there. The intention *180 of Myrtle C. King in taking these two men into the partnership was to have R. P. King take over the management of Motor Sales Company and expand it by making more sales of goods to the public. J. R. King was to help with the records. The partnership of Myrtle C. King, J. R. King, and R. P. King was terminated as of the close of business on August 31, 1944, by an agreement entered into on August 28, 1944 under which the assets, consisting principally of cash, were divided equally among the three. The expected expansion had not been realized and R. P. King wanted to devote his time to farming. Thereafter, Myrtle C. King became sole proprietor of the business of Motor Sales Company and continued to be its sole proprietor up to the date of the hearing in this case. No one ever contributed any capital to the business of Motor Sales Company. The petitioner took no part in the operation or management of the business conducted under the name of Motor Sales Company. He occasionally discussed that business with his wife but he made no decisions. She made the decisions. Myrtle C. King was occupied as a housewife and mother during the taxable years and never worked at the business of Motor *181 Sales Company on a regular schedule. She never gave a substantial part of her time to that business. The record does not show how much of her time was devoted to that business but she kept in touch with it, conferred with the manager, signed some checks and contracts, took part in some business transactions, and did whatever was necessary to assist the manager in carrying on the business. The manager took full charge of all day-to-day and routine matters. The earnings of Motor Sales Company for the last five months of 1938 amounted to about $16,800 of which the two partners each withdrew $5,200. The earnings of Motor Sales Company for 1939 amounted to about $49,000 of which Myrtle C. King withdrew a little over $32,000, and those for 1940 amounted to about $25,000. Myrtle C. King withdrew from the business during 1940 more than the earnings for that year. The earnings of Motor Sales Company for 1941 amounted to about $46,000 of which Myrtle C. King withdrew about $10,000 and the other two partners withdrew $2,500 each. All partners made withdrawals in subsequent years until the partnership was dissolved. Moore, in the spring of 1939, notified the petitioner that he had a chance *182 to sell his stock in the corporation but he would allow the petitioner ten days within which to agree to buy the stock for $100,000 on terms mentioned. They eventually agreed that the petitioner would pay $50,000 of the purchase price in cash and would have two years in which to pay the remaining $50,000. The petitioner at that time did not have funds to make this purchase but felt that he would have to make some arrangement in order to protect his half interest in the corporation. He borrowed $25,000 from a bank. He and his wife both signed the note and he pledged his stock in the corporation as security. His wife suggested that she could lend him some money until his affairs straightened out and he could repay it. She did lend him money during 1939, 1940 and 1941 without any understanding as to when it would be repaid. The petitioner purchased the Moore stock. The petitioner and his wife entered into an agreement in regard to their loans on September 1, 1944. It was stated therein that the correct amount of the principal due at that time was $79,030 with interest thereon at 4 per cent amounting to $14,995.33. The petitioner paid about $19,000 in cash at that time and agreed to *183 pay the balance at the rate of $5,000 a year with interest at 4 per cent. He gave his notes for those payments and pledged his stock in the corporation as security. $40,000 of the notes had been paid at the time of the trial. Motor Sales Company had a separate bank account on which the petitioner had no authority to draw. The petitioner never received any benefit from the earnings of Motor Sales Company except as his wife loaned him money, and except as she may have bought some goods for use in the household or for her own use, wholly on her own initiative. The Commissioner, in determining the deficiencies, added to the income of the petitioner for 1938 $8,406.76, representing his wife's share of the income of Motor Sales Company for the last five months in 1938, and added to his income for 1939 $49,461.47, for 1940 $25,892.31, and for 1941 $46,486.96, representing all of the income of Motor Sales Company for those years. He explained that for the last five months of 1938 "you were the owner of a 50 per cent interest in the partnership, Motor Sales Company" and for 1939, 1940 and 1941 "you were the sole owner of the business conducted under the name of Motor Sales Company." *184 The petitioner at no time material hereto had any interest in the business or income of Motor Sales Company, and none of the income of that business for the taxable years belonged to him or was taxable to him. Opinion MURDOCK, Judge: The Commissioner claims that there was a lack of bona fides in what he says was the transfer of the business from partnership of King & Moore to Motor Sales Company in 1938 and, as a consequence, he would regard the petitioner, rather than his wife, his father, and his brother, as the person who earned and was entitled to the income of Motor Sales Company. The evidence does not even suggest a lack of bona fides or a tax avoidance scheme in the transactions which took place in August 1938, although later changes in interests in the business are not easily understood. King and Moore realized that they could not continue the partnership business while they were the sole stockholders and operators of the business of the corporation. They were advised by counsel that they would have to get out of that business. It had been an important adjunct of the corporation and a profitable business. They did not want to lose any more of its benefits than was absolutely *185 necessary. The petitioner's wife suggested that she would like to take over the business and Moore's wife then agreed to go along as an equal partner. This solution preserved for the corporation all of the benefits theretofore derived by it from the business as carried on by King & Moore, and it preserved for the King and Moore families the profits from that business. The business was entirely legitimate but unusual. Its profits were derived chiefly because it served the convenience of the corporation. Those profits were derived with almost no effort on the part of the partnership, at almost no cost to the partnership, and without the investment of any capital by the partners. It is not surprising that King and Moore wanted to keep the business in the family or that Myrtle C. King, who had no previous business experience, and who was able to devote only a small part of her time to the business, could take it over and operate it successfully with the aid of a low-salaried manager. However, the situation was there and advantage was taken of it in a legitimate way. Subsequent changes are not very significant as far as the petitioner is concerned. He had almost no connection with the *186 business after the first of August 1938. Even before that time he had contributed little to the earning of its profits, but thereafter he contributed nothing except as he saw to the continued successful operation of the corporation which needed the products obtained through the partnership. He had no financial interest in the partnership business after August 1, 1938. He did not transfer any tangible property on that date to his wife. He and Moore could no longer use the contracts which they had for the sale of the products of various manufacturers and those contracts were not assignable. Cf. . They did everything they could to assist their wives in taking over the business, and the suitation may have given to it something in the nature of good will which went from the King & Moore partnership to Motor Sales Company. But that would not justify the Commissioner in taxing to the petitioner all or any part of the profits subsequently earned by Motor Sales Company. Myrtle did little to earn the profits but the record indicates that she, rather than her husband, did what was necessary to keep the business operating successfully and she held on to *187 the income as her own. The important fact is that the income can not be attributed either to capital contributed by the petitioner or to services performed by him. (February 24, 1949). Decision will be entered under Rule 50.